IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LIBERTY MUTUAL INSURANCE COMPANY,
ET AL                                                                                    PLAINTIFFS

V.                                                         CIVIL ACTION NO. 3:07CV73-A-A

PAULINE TEDFORD, ET AL                                                    DEFENDANTS

AND

FRANKLIN CORPORATION                                              COUNTER-PLAINTIFF

V.

LIBERTY MUTUAL INSURANCE COMPANY,
ET AL                                                                         COUNTER-DEFENDANTS


ORDER MOTION FOR PROTECTIVE ORDER [57]
AND MOTION TO COMPEL [67]

The court has before it a Motion for Protective Order [57] filed by Franklin Corporation and a Motion to Compel [67] filed by Liberty Mutual Insurance Company. The central issue in the motions and, in fact, to the case as a whole, is one of privilege.

This is a declaratory judgment action in which plaintiff Liberty Mutual also seeks reimbursement of defense fees, workers' compensation benefits and costs arising out of a state court case against Franklin Corporation ("Franklin") and other individual defendants. The underlying state court case involved claims by certain Franklin employees against Franklin and other individually named Franklin employees; in that case, the plaintiffs claimed that the

1

defendants' intentional choice not to provide adequate ventilation and protection to the plaintiffs allowed plaintiffs' exposure to an adhesive in their employment which caused them injury and damages. Liberty Mutual had issued Workers' Compensation and Employers Liability Policies to Franklin which were in effect during the time periods relevant to the state court case and claims. Liberty Mutual had paid claims by each of the state court plaintiffs under the Workers' Compensation policies; it defended the underlying state court case under a reservation of rights. The state court jury returned a verdict against Franklin and awarded the plaintiffs punitive damages in excess of a million dollars.

Liberty Mutual thereafter filed this action seeking a declaration that (1) it was not under a duty to defend Franklin in the state court case under the terms of its policies for Franklin; (2) it no obligation to indemnify Franklin under the policies; and (3) Franklin now owes it not only all workers' compensation benefits paid but also all costs of litigation and trial and other defense costs which Liberty Mutual paid as a result of the state court action against Franklin and its employees.

Franklin answered the complaint in this case and filed a counterclaim alleging that Liberty Mutual failed to issue reservation of rights letters to Franklin that would have informed Franklin of a conflict of interest between Liberty Mutual and Franklin. Franklin claims that had it known of its right under the policies and Mississippi law to have independent counsel, and of the potential conflict of interests between it and its insurer, it could have demanded its own independent counsel and controlled its own defense in the underlying case. According to Franklin, by this failure Liberty Mutual breached its fiduciary duties to Franklin and is now estopped from seeking reimbursement and other funds from Franklin. Franklin asks that the

court exonerate Franklin from all claims brought by Liberty Mutual and itself now seeks damages from Liberty Mutual by way of its counterclaim.

At issue in the pending motions are documents and information generated in relation to or as a result of the underlying state court litigation. The central question is whether or not certain documents and information are protected from production by the attorney-client privilege or the work product doctrine or both.

Under Rule 501 of the Federal Rules of Evidence, state law determines the applicability of a privilege in civil diversity actions where state law supplies the rule of the decision. *Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir. 1991). Mississippi privilege law thus governs this diversity action. Generally, the federal and Mississippi laws of privilege mirror one another, though there are slight but meaningful differences.

Rule 502(b) of the Mississippi Rules of Evidence defines the attorney-client privilege as the client's right to refuse to disclose and prevent others from "disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." The Rule further requires that the confidential communications must have been made:

> (1) between [the client] or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by [the client] or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of a client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

*Id*. To remain protected, a communication must have not been intentionally disclosed to third

persons unless the disclosure was "made in furtherance of the rendition of professional legal service to the client or disclosure was reasonably necessary for the transmission of the communication." MISS. R. EVID. 502(a)(5). Of course, the privilege is a two-way street, providing protection whether the lawyer communicates to the client or vice versa. MISS. R. EVID. 502 cmt.; *Hewes v. Langston*, 853 So.2d 1237, 1244 (Miss. 2003).

Because attorneys often desire to more narrowly construe Rule 502 than is required, it bears repeating that the rule does not demand that the communication solely contain legal analysis or advice; rather, privilege protection attaches to those communications that would *facilitate the rendition of* legal services or advice. *Hewes*, 853 So.2d at 1244 (quoting *Dunn*, 927 F.2d at 875) (applying Mississippi law)). More importantly, the Mississippi Supreme Court describes its interpretation of the attorney-client privilege as being broad and has held that "the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation." *Id*. (quoting *Barnes v. State*, 460 So.2d 126, 131 (Miss. 1984).[1]

A client may be a corporation, and a client's representative may be a corporate employee who has "authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or an employee of the client having information needed to enable the lawyer to render legal services to the client." MISS. R. EVID. 502(a)(1), -(2).

Waiver of the attorney-client privilege may occur in a number of ways, the most common waiver occurring when a client reveals otherwise privileged communications with his or her

---

[1] For instance, research conducted by an attorney in response to his client's request achieves privileged status. *Id.* at 1247 (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)).

attorney to a third party. *See Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So.2d 767 (Miss. 2003). Another method is relevant here: "By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable." *See id.* at 773, citing *American Standard, Inc. v. Bendix Corp.,* 80 F.R.D. 706, 708 (W.D.Mo.1978). In *Conkling v. Turner,* 883 F.2d 431 (5th Cir.1989), the Fifth Circuit stated,

> The attorney-client privilege "was intended as a shield, not a sword." "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."

*Conkling,* 883 F.2d at 434 (citations omitted). *See also Jackson Medical Clinic for Women, P.A. v. Henley,* 965 So.2d 643, 648 (Miss. 2007) (fairness requires that use of the attorney-client privilege as a sword prohibits hiding behind it as a shield).

Moreover, the general rule, which Mississippi appears to follow, is that a waiver of the privilege is deemed to encompass all information related to that topic. *See Bennett v. State,* 293 So.2d 1, 4 (Miss.1974), *overruled on other grounds by Triplett v. State,* 579 So.2d 555 (Miss.1991) (upon waiver of the privilege, the client "and his attorney may then be fully examined in relation thereto."), quoted in *Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So.2d. at 771. *See also* Hazard & Rice, "Judicial Management of the Pretrial Process in Massive Litigation: Special Masters as Case Managers," 1982 AM. BAR FOUND. RES. J. 375, 399 ("The waiver doctrine entails the result of waiver not only of the claim for the particular document, but for any other document relating to the same subject matter."), quoted in C.

5

Wright, A. Miller & R. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2016.2 at 238 & n.7 (1994).[2]

In Mississippi, the attorney-client privilege belongs to the client; lawyers must, however, "maintain inviolate the confidence and, at every peril to themselves, . . . preserve the secrets of their clients." Miss.Code Ann. § 73-3-37(4) (2000). Although it is only the client who may claim the privilege, the client may also waive it. "Once the client has effectively waived the privilege, the attorney is competent as a witness regarding matters otherwise within the scope of the privilege." *Barnes v. State,* 460 So.2d 126, 131 (Miss.1984). In *Bennett v. State, supra*, the Mississippi Supreme Court addressed the effect of a client's waiver of the privilege:

> While a client does not lose the benefit of the privilege where he is compelled, against his protest, to disclose confidential statements, if he voluntarily introduces testimony relating to such communications, his privilege may not thereafter be asserted. Thus, where he voluntarily testified, as a witness, to confidential communications made by him to his attorney, he thereby waives the privileged character of such communications, and he and his attorney may then be fully examined in relation thereto.

*Bennett,* 293 So.2d at 5, quoting 58 AM.JUR. *Witnesses* § 526.

The work product doctrine does not fall under the auspices of Federal Rule of Evidence 501; the federal law which controls is codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Dunn*, 927 F.2d at 875. Under the general application of the doctrine, a party cannot

---

[2] Footnote 7 of Wright and Miller contains numerous citations from numerous jurisdictions supporting the proposition that waiver extends to all communications between counsel and client related to that subject. Although the Mississippi Supreme Court has recognized the concept of a limited waiver, *see, e.g., Century 21 Deep South Properties, Ltd. v. Corson*, 612 So. 2d 359, 374-75 (Miss 1993), in every case where the concept was recognized, the client specifically reserved its right to claim the privilege except as to the topic of the information at the time the information was offered.

discover documents or tangible things otherwise discoverable and "prepared in anticipation of litigation or for trial by or for another party by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). Thus, the doctrine protects documents prepared by a party's agent just as it would a party's attorney. *E.g., United States v. Nobles*, 422 U.S. 225, 238-39 (1975)." FED. R. CIV. P. 26(b)(3).

The work product doctrine is very different from the attorney-client privilege. Unlike the attorney-client privilege, the protections of the work product doctrine are held by both the client and the attorney, and either may assert it. *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994). The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. *Shields v. Sturm, Ruger & Co.* 864 F.2d 379, 382 (5th Cir. 1989). The work product doctrine, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the protections of the work product doctrine. *Id.;* 8 Wright & Miller, Federal Practice & Procedure § 2024, at 210 (1970). It is important to note, particularly in the instant case, that "even if one party to a common defense unilaterally tenders work-product materials to an adversary, such tender does not constitute a waiver for other parties to a common defense." Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, at 616 (4th ed. 2001) (hereafter Epstein), citing *John Morrell & Co. v. Local Union 304 A, et al*, 913 F.3d

7

544, 556 (8TH Cir. 1990), *cert. denied*, 500 U.S. 905 (1991).

Still, its protections can be waived. For example, in the Fifth Circuit work product protections are waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered. *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1356 (5th Cir.1983). Moreover, where a party puts in issue an attorney's opinion or work product – as in this case, where the issue of attorney's services and defense of the case, including settlement possibilities and failure to reasonably seek settlement – both the attorney client privilege and protections afforded by the work product doctrine are waived. *Cincinnati Ins. Co v. Zurich Ins. Co.* 198 F.R.D. 81 (D.C. Cir. 2000); *see also* Epstein, *supra*, at 626. Counsel's claim to the benefit of the doctrine cannot be separated here from that of the client in this case. Franklin was, as it is in this case, represented by Mitchell, McNutt and Sams P.A. with respect to coverage issues surrounding the underlying state court action; the counterclaim in this case is Franklin's against Liberty Mutual, but the claim is advanced by and on the advice of its counsel, the other owner of the work product protections. Both entities, client and counsel, made an affirmative choice to file the counterclaim.

By filing its counterclaim alleging that Liberty Mutual did not make Franklin aware of its rights under Mississippi law to hire independent counsel at Liberty Mutual's expense to defend Franklin in the underlying case, Franklin has put in issue Liberty Mutual's obligations, the neglect of which Franklin now claims entitle it to relief:

> Liberty Mutual, however, in violation of its fiduciary obligations to Franklin, failed to notify Franklin that Liberty Mutual had a direct conflict of interest created by its decision to defend Franklin under a reservation of its rights, by its

8

> failure to enumerate those conflicts of interest so that Franklin could make a fully informed decision to protect its interests, and further failed to advise Franklin that Liberty Mutual was obligated under the law of Mississippi to inform Franklin that Liberty Mutual would pay for counsel of the selection of Franklin at the expense of Liberty Mutual and that Franklin would have the right to control the litigation through such counsel.

Franklin's Answer, Affirmative Defenses and Counterclaim, p. 11, ¶ f. Franklin has alleged that "Liberty Mutual was grossly negligent in its so called [sic] defense of Franklin." Id., p. 12, ¶ i. These allegations and the remaining allegations of the counterclaim put the acts and omissions of Liberty Mutual and the attorneys it hired for Franklin squarely in question in this case. As noted above, however, association in a joint defense does not automatically also subject the work product of other attorneys to disclosure. The protections of the work product doctrine may still be afforded to the attorneys for the individual Franklin defendants.

There is no doubt in the court's mind that these allegations can be defended by Liberty Mutual only by demonstrating that Franklin knew or reasonably should have known this information – particularly since Franklin had hired "coverage counsel" to advise it with respect to the underlying state claims – and that any failure so to inform Franklin was not the cause of the injury Franklin now claims. Thus, Franklin, having made this affirmative claim, may not hide behind claims of privilege or work product. To allow it to do so would be to convert the privilege from the shield it is intended to be to a sword against which Liberty Mutual is helpless to defend. Such is not the intended role of the attorney-client privilege or the work product doctrine. The court holds that in advancing its counterclaim against Liberty Mutual, Franklin voluntarily surrendered the protections which the attorney-client privilege and work product doctrine otherwise offered it. However Franklin has not waived, nor can it waive, the protections

9

of the work product doctrine relating to the attorneys for the individual Franklin defendants.

    1.       Franklin's Motion for Protective Order [57]

Franklin seeks a protective order covering numerous categories of documents and information relating to the underlying state court action, Franklin, the individual Franklin defendants, and their respective counsel.[3] Since filing of the motion, however, the parties have agreed to a stipulation that resolves many of the issues raised in the motion. The only remaining issues before the court are: (A) whether communications between Franklin and its counsel Mitchell McNutt and Sams are protected from disclosure by the attorney-client privilege; (B) whether communications between Franklin and its appellate counsel Wise Carter Child and Caraway are protected from disclosure by the attorney-client privilege; (C) whether communications between Franklin and counsel for the individual defendants in the underlying state court case, Daniel Coker Horton and Bell, are protected by the attorney-client privilege; (D) whether the work product of all lawyers other than Mitchell McNutt and Sams is protected by the work product doctrine; and (E) whether Franklin is required to prepare and serve privilege logs for documents contained in all of the voluminous law firm files.

After careful review of the motion, responses and diligent research into the issues of this case, the court concludes that:

    A.      Communications between Franklin and its counsel Mitchell McNutt and Sams regarding coverage issues as to the underlying state court case are not privileged

---

[3] In the underlying state court case, Liberty Mutual hired and assigned defense of the case against Franklin to Tim Crawley of Anderson, Crawley and Burke, PLLC. Liberty Mutual hired and assigned defense of the individual Franklin defendants to Robert Mims of Daniel, Horton, Coker & Bell. Franklin hired L.F. Sams of Mitchell, McNutt and Sams, P.A. to advise it on the issue of coverage.

because Franklin has waived the attorney-client privilege and protection of the work product doctrine by filing its counterclaim against Liberty Mutual.

B. Communications between Franklin or Mitchell McNutt and Sams and Franklin's appellate counsel Wise Carter Caraway and Child regarding coverage issues as to the underlying state court action are not privileged because Franklin has waived the attorney-client privilege and protection of the work product doctrine by filing the counterclaim against Liberty Mutual.

C. Because of the wording of the Stipulation filed with the court [#79], the court is uncertain whether Daniel Coker Horton and Bell represented Franklin as well as the individual Franklin defendants in the underlying state court action S*ee* Stipulation, p.1, ¶ 1. If so,[4] however, neither communications between the individual Franklin defendants and their counsel Daniel Coker *regarding coverage issues* during Daniel Coker's representation of Franklin, nor communications *regarding coverage issues* between Mitchell McNutt and Sams and Daniel Coker are privileged because the attorney-client privilege was completely waived by Franklin's filing of its counterclaim in the instant case. Notwithstanding, the individual defendants have in no way waived their attorney client privilege or the work product doctrine as it applies to their independent defense in the underlying action; thus, any documents or information pertaining to their individual communications and advice with and from counsel on all other

---

[4]For instance, claims against the individuals conceivably could have resulted in liability on Franklin's part through the doctrine of *respondeat superior*.

11

matters are protected from discovery.

4. Regarding work product of each of the above referenced lawyers and law firms, the court holds that there may be no discovery of any documents prepared by these attorneys in anticipation of litigation or for use at trial after June 18, 2007, the date of the filing of this declaratory judgment. Any documents created after that date were presumably prepared for the purpose of defending or prosecuting the instant case and would not be subject to the waiver afforded by virtue of the filing of the counterclaim in this case. Documents prepared by Robert Mims or Daniel Coker Horton and Bell for the defense of the individual Franklin defendants on matters other than coverage issues in the underlying state court case are likewise protected from discovery. Documents prepared by all other counsel, and specifically those prepared regarding Franklin by Anderson Crawley Burke, PLLC and Mitchell McNutt and Sams and Wise Carter Caraway and Child concerning the underlying state court case are discoverable as the applicable protections provided by the work product doctrine have been waived.

5. The defendant obviously need not prepare a privilege log of the documents and information that the court has determined are no longer protected and must therefore be produced in discovery. As for remaining documents that are still subject to protection from disclosure, counsel will be required to provide a detailed privilege log. It is not necessary to detail documents that are duplicated from one law firm's file to another (*e.g.*, a letter from Robert Mims to Tim Crawley that is contained in both Crawley's and Mims's files) so long as the

documents are identical or unaltered. Each document need only be listed once, and a duplicate may be simply listed as duplicate of document number ___ on page ___ of the privilege log.

All documents and information to be produced pursuant to this decision must be produced on or before June 1, 2008. All supplements to privilege logs pursuant to this ruling must also be produced by that date.

    2.    Liberty Mutual's Response to Motion for Protective Order and Motion to Compel

Liberty Mutual responded to Franklin's motion for a protective order and filed an accompanying motion to compel. Liberty Mutual argues that the crux of the issues contained within Franklin's motion for protective order are the same issues that effectively prohibit Franklin's success on its counterclaim, *i.e.*, not only did Franklin waive the privilege by filing its counterclaim, but also the counterclaim must fail *precisely because* Franklin invoked attorney-client privilege. According to Liberty Mutual, Franklin may not succeed on a counterclaim that rests on Franklin's lack of knowledge and at the same time prevent discovery of Franklin's knowledge based on privilege. Liberty Mutual asks that the court defer ruling on Franklin's motion for protective order until after the court has ruled on Liberty Mutual's motion for summary judgment.[5] Further, Liberty Mutual asks that if the court denies the motion, it compel Franklin to produce all information and materials responsive to Liberty Mutual's discovery

---

[5]Liberty Mutual filed its motion for summary judgement as to Franklin's counterclaim on February 13, 2008. Also on that date Liberty Mutual filed a motion asking that District Judge Aycock consider not only the motion for summary judgment, but Franklin's motion for protective order and Liberty Mutual's motion to compel. On March 6, 2008, Judge Aycock denied the motion, effectively denying Liberty Mutual's request that the court defer ruling on the motion for protective order.

requests because of these waiver issues.  By its previous findings, the court has granted, at least in part, Liberty Mutual's motion to compel by virtue of denying, in part, Franklin's motion for protective order.  Franklin must produce all documents and information as outlined above no later than June 1, 2008.

Franklin's motion for protective order is granted in part and denied in part, and Liberty Mutual's motion for a protective order is likewise granted in part and denied in part as detailed above..

SO ORDERED, this the 1st day of May, 2008.

                                          __/S/ S. ALLAN ALEXANDER_____
                                          UNITED STATES MAGISTRATE JUDGE