**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**LIBERTY MUTUAL INSURANCE COMPANY, et al.**　　　　　　　**PLAINTIFFS**

**v.**　　　　　　　　　　　　　　　　　　　　**CAUSE NO. 3:07CV73-SA-SAA**

**PAULINE TEDFORD, et al.**　　　　　　　　　　　　　　　**DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

Comes now before this Court, Plaintiff's Motion for Summary Judgment as to Franklin's Counterclaim [80] and Plaintiff's Motion to Disqualify Defendant Franklin Corporation's Attorney [131]. Also before the Court are four appeals of magistrate judge decisions: Appeal [147] of Magistrate Judge Alexander's Order dated May 1, 2008 [133]; Appeal [172] of the Order granting in part and denying in part the Motion for Reconsideration [165] of the Order dated May 1, 2008; Appeal [157] of the magistrate judge's order compelling answers to deposition question [150]; and Appeal [179] of Order [171] denying the Motion for Reconsideration of a Motion to Compel. All of these motions and appeals can be disposed of with the same analysis as they center around one issue: privilege. After reviewing the appeals, motions, responses, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

This is a declaratory judgment action in which plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks reimbursement of defense fees, workers' compensation benefits and costs arising out of a state court case against Franklin Corporation ("Franklin") and other individual defendants. In the underlying state court case, the plaintiffs claimed that the defendants' intentional choice not to provide adequate ventilation and protection from an adhesive used in the furniture production process caused the employees' injury and damages. Liberty Mutual issued the Workers'

Compensation and Employers Liability Policies to Franklin in effect during the time periods relevant to the state court case and claims. Liberty Mutual paid claims by each of the state court plaintiffs under the Workers' Compensation policies and defended the underlying state court case under a reservation of rights. The state court jury returned a verdict against Franklin and awarded the plaintiffs punitive damages in excess of a million dollars.

Liberty Mutual thereafter filed this action seeking a declaration that (1) it was not under a duty to defend Franklin in the state court case under the terms of its policies for Franklin; (2) it was not obligated to indemnify Franklin under the policies; and (3) it is owed by Franklin all workers' compensation benefits paid and all costs of litigation and trial and other defense costs which Liberty Mutual paid as a result of the state court action against Franklin and its employees.

Franklin answered the complaint in this case and filed a counterclaim alleging that Liberty Mutual failed to inform Franklin of a potential conflict of interest between Liberty Mutual and Franklin. Franklin claims that had Liberty Mutual advised it of its right pursuant to Mississippi law to have independent counsel, and of the potential conflict of interests between it and its insurer, it could have demanded its own independent counsel and controlled its own defense in the underlying case. According to Franklin, by this failure, Liberty Mutual breached its fiduciary duties to Franklin and is now estopped from seeking reimbursement and defense costs from Franklin. Franklin asks that the court exonerate Franklin from all claims brought by Liberty Mutual and now seeks damages from Liberty Mutual by way of its counterclaim.

Franklin's counterclaim is based on the principle outlined in <u>Moeller v. American Guarantee & Liability Insurance Company</u>, 707 So. 2d 1062 (Miss. 1996). In that case, American Guarantee issued a multi-peril insurance policy to the law firm of Fuselier, Ott, McKee & Moeller, P.A. While

2

this policy was in effect, the law firm terminated Moeller. Moeller brought suit for, *inter alia*, wrongful termination and breach of employment contract. Fuselier, Ott & McKee counterclaimed for wrongful solicitation of the firm's clients and interference with business relations. In that action, the Chancellor awarded Moeller breach of contract damages and tort damages, including attorneys' fees.

On appeal, the Mississippi Supreme Court affirmed the contract damages and reversed Moeller's tort damages. According to the American Guarantee multi-peril policy, the insurance company obligated itself to defend the insured upon certain conditions being met. Specifically, the insurance policy exempted from coverage personal injury sustained as a result of an offense directly or indirectly related to the employment of such person by the named insured. Therefore, only certain parts of the complaint and counterclaim were explicitly covered by the American Guarantee policy. Thus, the Mississippi Supreme Court reasoned, the remaining claims were outside the policy.

To defend the underlying lawsuit, the law firm retained counsel and demanded that American Guarantee acknowledge coverage and pay for their defense. American Guarantee initially denied coverage. After further review, however, American Guarantee agreed to provide a defense under a reservation of rights but selected its own counsel to represent the law firm. Pursuant to the reservation of rights letter, the law firm was free to and did retain independent counsel at their own expense along with the American Guarantee-retained counsel. The American Guarantee policy also covered Moeller, but no notice was sent to him regarding that coverage, and Moeller did not demand to be defended.

Thereafter, American Guarantee filed a declaratory action that it had properly fulfilled its duty to defend the law firm against Moeller's claims, that it had properly reserved its rights under

the policy, and that it was not responsible for any portion of the judgment obtained against the firm. Moreover, American Guarantee further contended that it was not under a duty to defend the parties on appeal. Moeller was named as a defendant, although no relief was requested of him.

Moeller answered and counterclaimed seeking actual and punitive damages and attorneys' fees incurred in the declaratory judgment. Moeller contended that he was not aware of or notified he was covered under the insurance policy until the filing of the declaratory action. Thereafter, he amended his counterclaim alleging that American Guarantee's failure to notify him of his insured status injured him.

A Special Chancellor was appointed to hear the case and ruled that American Guarantee was obligated to defend the firm under the policy, but had no obligation to indemnify the firm for any acts not covered by the policy. Furthermore, the special chancellor ruled that the obligation to defend was fulfilled and no longer continued. As to the firm's counterclaims against Moeller, the special chancellor ruled that the insurance company had a duty to defend Moeller because the allegations were within the coverage of the policy. The Chancellor further held that the lack of notice did not prevent recovery as it was implausible to require the insured to notify the insurer of its own lawsuit.

Both parties appealed the Special Chancellor's findings to the Mississippi Supreme Court. That Court held "[b]ecause the insurer must eventually pay whatever sums the insured becomes legally obligated to pay, the insurance carrier has the right to select the attorney retained to defend the claim." Moeller, 707 So. 2d at 1068 (citing Hartford Acc. & Indem. Co. v. Foster, 528 So. 2d 255, 263 (Miss. 1988)). The Court also recognized that "[u]nquestionably, the insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in

event a judgment is rendered against the insured." Id. at 1069 (citing State Farm Mut. Auto. Ins. Co. v. Acosta, 479 So. 2d 1089, 1092 (Miss. 1985)). However, the Court noted that defending under a reservation of rights creates a conflict of interest between the insured and insurer, and therefore, a "special obligation is placed upon the insurance carrier." Id. That obligation requires the insurer's attorney to "undertake to represent only the interest of the insurance carrier for the part covered, and the insurance carrier should afford the insured ample opportunity to select his own independent counsel to look after his interest." Id. at 1070 (citing Hartford Acc. & Indem. Co., 528 So. 2d at 269; State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co., 394 So. 2d 890, 894 (Miss. 1981); Anthony v. Frith, 394 So. 2d 867 (Miss. 1981)).

The Mississippi Supreme Court held that American Guarantee had a duty to defend the law firm on Moeller's defamation claim, as it was the only of the Plaintiff's claims covered by the policy. In addition to defense of this singular claim, American Guarantee was also legally obligated to pay for that particular claim. The Court also noted that the law firm chosen by the insurance company was under a professional obligation to recognize the two conflicts of interest between Fuselier, Ott & McKee and American Guarantee, namely that they were (1) defending under a reservation of rights, and (2) attempting to represent both parties in defending all claims only one of which was covered by the policy. Moreover, "[b]ecause Fuselier, Ott and McKee was being defended under the defamation claim with a reservation of rights, American Guarantee was obligated to let them select their own attorney at American Guarantee's cost to represent them." Id. at 1071. In holding that American Guarantee was obligated to pay for all reasonable legal expenses of the law firm because they failed to permit the firm to select its own counsel for the uncovered claims, the Court noted, "A law firm which cannot be one hundred percent faithful to the interests of its clients offers

no defense at all." Id.

As to Moeller, the Mississippi Supreme Court held that if the law firm's counterclaim contained a claim covered under the terms of the policy, it was the duty of American Guarantee to furnish Moeller, also an insured under the same policy, a legal defense to such claim.  Because of that duty, American Guarantee was obligated to permit Moeller to select his own individual counsel at the cost of American Guarantee to prevent the conflicts of interest at play in the case.  However, the Court did not allow punitive damages against American Guarantee for failure to notify Moeller of his right to a defense.

In sum, Moeller stands for the proposition that when a conflict of interest arises between an insured and the insurer, particularly through a reservation of rights or the situation in which some claims are clearly not covered by the insurance policy, the insurer is under an obligation to permit the insured to select his or her own individual counsel with the fees and costs to be paid by the insurer.

Here, Franklin Corporation counterclaims that Liberty Mutual breached its fiduciary duty to inform them of the conflicts at issue and notify them of their right to select separate counsel at Liberty Mutual's expense.  This breach, Franklin asserts, equitably estops Liberty Mutual from denying their claim.

Equitable estoppel "precludes a party from denying a material fact which has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed."  Butler v. City of Eupora, 725 So. 2d 158, 160 (Miss. 1998).  "Where it would be substantially unfair to allow a party to deny what he has previously induced another party to believe and take action on, equitable estoppel may be enforced."  Id.  Under

6

Mississippi law, equitable estoppel exists where there is a "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 492 (Miss. 2005) (citing Cothern v. Vickers, Inc., 759 So. 2d 1241, 1249 (Miss. 2000), Covington County v. Page, 456 So. 2d 739, 741 (Miss. 1984)).[1] Equitable estoppel has also been described as:

> Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

Chapman, 473 So. 2d at 470 (citing Crowe v. Fotiades, 80 So. 2d 478, 486 (Miss. 1955)). The doctrine of equitable estoppel has also been noted to "require[] reasonableness." Solomon v. Walgreen Co., 975 F.2d 1086, 1091 (5th Cir. 1992). Specifically, for equitable estoppel doctrines to apply, "reasonableness on the part of the party seeking the benefit of [its] application is expected." PMZ Oil Co. v. Lucroy, 449 So. 2d 201, 206 (Miss. 1984). The burden of establishing the elements of an estoppel by a preponderance of the evidence is on the party asserting the estoppel. Hathorn v. Illinois Cent. Gulf R.R. Co., 374 So. 2d 813, 817 (Miss. 1979); Gates v. Owen Chevrolet Co., 294 So. 2d 179, 180 (Miss. 1974).

Liberty Mutual asserts that Franklin cannot establish the essential elements of an equitable estoppel claim because it was aware of its' Moeller rights and cannot claim to be ignorant of those

---

[1] Even though the cases discussing equitable estoppel are not on point with regard to insurance policies and reservations of rights letters, the general elements of the claim are the same regardless of the subject matter. See B.C. Rogers Poultry, 911 So. 2d at 491 (application of equitable estoppel to arbitration dispute); Chapman v. Chapman, 473 So. 2d 467, 470 (Miss. 1985) (action to set aside a deed and remove cloud on title); Gale v. Thomas, 759 So. 2d 1150 (Miss. 1999) (personal injury action); Lynch v. Miss. Farm Bureau Cas. Ins. Co., 880 So. 2d 1065, 1071 (Miss. Ct. App. 2004) (insurance contract dispute).

rights. Thus, Liberty Mutual contends, either Franklin cannot make out a prima facie case of equitable estoppel because it refuses to waive the attorney-client privilege and prove that they really relied on Liberty Mutual's omission of <u>Moeller</u> language in the reservation of rights letter to Franklin's detriment, or because communications between Franklin's counsel and Franklin prove that Franklin was aware of those <u>Moeller</u> rights and chose to sit on those rights, thus proving that they were unreasonable in relying on Liberty Mutual's omission of the <u>Moeller</u> language.

During the course of discovery, Franklin Corporation filed a motion for protective order [57] seeking to insulate itself from discovery related to communications between Franklin and its attorneys involved in the underlying state action. Specifically, Franklin sought to protect its communications with Anderson, Crawley and Burke, PLLC, the firm hired by Liberty Mutual to defend Franklin under the reservation of rights; Mitchell McNutt & Sams, P.A., which Franklin retained as its coverage counsel; Wise Carter Child & Caraway, who is defending Franklin on its appeal of the state court decision; its' individual employee's communications with Daniel Coker Horton and Bell, and Robert Mims, counsel hired by Liberty Mutual to defend those individuals; and all work product of those attorneys mentioned.

In response, Liberty Mutual thereafter filed a Motion to Compel that same discovery on the basis that Franklin's own counterclaim constituted a waiver of the attorney-client privilege; thus those communications were discoverable.

Magistrate Judge Alexander issued an order [133] granting in part and denying in part both motions. The magistrate judge held that Franklin waived the attorney-client privilege by voluntarily injecting into this case a material issue requiring the ultimate disclosure by the attorney of information ordinarily protected by the privilege. Moreover, the court held that by putting into

question the attorneys' opinions and work product, Franklin had also waived the protection of the work product doctrine. The magistrate judge held that Franklin's counterclaim allegations put the acts and omissions of Liberty Mutual and its' attorneys hired for Franklin squarely at issue in this case, and that Franklin's estoppel claim put Franklin and Franklin's coverage counsel's knowledge of its right to hire independent counsel directly at issue in this case.

Therefore, Magistrate Judge Alexander held that the communications and work products generated between Franklin and the following counsel were not privileged and discoverable: Mitchell McNutt & Sams, Wise Carter Caraway and Childs, and Daniel Coker Horton and Bell with regards to coverage issues only. Judge Alexander also held that all materials prepared after June 18, 2007, the date of the filing of this declaratory judgment, were not discoverable.

Franklin filed a Motion for Reconsideration and Clarification [141] with Judge Alexander, and soon thereafter filed an Appeal [147] of the original order, even though the magistrate judge had not ruled on the pending motion for reconsideration. In her Order on the Motion for Reconsideration [165], Judge Alexander explained why Franklin's position that the attorney-client communications were not "at issue" in the counterclaim was untenable. Specifically, the magistrate judge noted that no case law eliminated Franklin's duty to establish all the elements of their equitable estoppel claim. That claim requires Franklin to prove reliance and prejudice on any representation of Liberty Mutual, which they cannot do without implicating some communication between Franklin and its attorneys. Therefore, Magistrate Judge Alexander held, Franklin had waived that privilege and that information was discoverable.

Franklin also filed an appeal [172] as to the magistrate judge's disposition of their Motion for Reconsideration. As both appeals by Franklin [147 and 172] were made on the same basis, they

are discussed in tandem below.

## B. Discussion and Analysis

On appeal from a ruling by the Magistrate Judge, this court will grant relief only if the opposing party shows the decision was clearly erroneous or contrary to the law. FED. R. CIV. P. 72(a).

Rule 502(b) of the Mississippi Rules of Evidence[2] defines the attorney-client privilege as the client's right to refuse to disclose and prevent others from "disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." The Rule further requires that the confidential communications must have been made:

> (1) between [the client] or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by [the client] or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of a client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Id.

Waiver of the attorney-client privilege may occur in a number of ways, the most common waiver occurring when a client reveals otherwise privileged communications with his or her attorney to a third party. See Jackson Med. Clinic for Women, P.A. v. Moore, 836 So. 2d 767 (Miss. 2003). More pertinent here is another form of waiver: "By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable." Id. at 773 (citing Amer.

---

[2]Federal Rule of Evidence 501 states that state law determines the applicability of a privilege in civil diversity actions where state law supplies the rule of decision. Because this case is premised on contract enforcement, a state law action, between parties of diverse states, the Mississippi Rule of Evidence that pertains to privilege applies.

Standard, Inc. v. Bendix Corp., 80 F.R.D. 706, 708 (W.D. Mo. 1978)). In Conkling v. Turner, 883

F.2d 431, 434 (5th Cir.1989), the Fifth Circuit stated,

> The attorney-client privilege "was intended as a shield, not a sword." "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."

(citations omitted). See also Jackson Med. Clinic for Women, P.A. v. Henley, 965 So. 2d 643, 648

(Miss. 2007) (fairness requires that use of the attorney-client privilege as a sword prohibits hiding

behind it as a shield).

Franklin's argument on appeal focuses on the case Twin City Fire Insurance Company v. City

of Madison, Mississippi, 309 F.3d 901 (5th Cir. 2002). Franklin contends that this case stands for

the proposition that evidence of knowledge is not essential to a claim of equitable estoppel;

therefore, Franklin's counterclaim cannot be grounds for waiver of the attorney-client privilege.

Twin City Fire Insurance Company ("Twin City") sued its insured, the City of Madison,

Mississippi, for a declaratory judgment denying coverage under a policy issued to Madison and for

reimbursement of defense costs concerning two lawsuits brought against Madison. After settlement

of the underlying claims, Twin City dropped its claim for defense costs and added a claim therein

for reimbursement of the settlement amount. Madison counterclaimed asserting coverage under the

policy and liability based on estoppel.

The trial court granted summary judgment to Twin City, holding that a policy exclusion

applied so that Twin City was entitled to reimbursement from its insured of the amount paid in

settlement of the underlying claims. The trial court additionally held that the City of Madison failed

to show a genuine issue of material fact regarding its ability to overcome the policy exclusion and expand coverage under a theory of estoppel. The Fifth Circuit affirmed the grant of summary judgment as to Twin City but reversed and remanded as to the insured's counterclaim based on estoppel. Specifically the Court found that the policy exclusion did preclude recovery for the City of Madison; however, the case could not be dismissed as a finding of a genuine issue of material fact as to estoppel could override the exclusion under the policy.

When sued in the underlying claim, Madison made a demand upon Twin City for defense and indemnity, assuming the suits were covered under the errors and omissions liability policy. Upon notification of the claims, Twin City appointed the Daniel Coker law firm as counsel for Madison with a reservation of rights. Although the reservation of rights letters did not spell out Madison's Moeller rights, discovery produced communications and documents between the Daniel Coker law firm and Madison and Madison's city attorney which explained Madison's right to independent counsel. Twin City asked the Court to view those communications as evidence that Madison made an informed decision to continue with their appointed counsel despite the conflict.

Using this attorney-client communication as evidence, the Court held that a reasonable fact finder could conclude that the Moeller notice was inadequate, resulting in Madison not giving their informed consent under the circumstances. Thus, the knowledge of Moeller created a fact issue as to whether the City detrimentally relied on the insurer's omission of Moeller instruction. The Court further noted that "[b]ecause these fact issues are germane to the question of whether Twin City discharged its duty to defend or mishandled the claim, they may provide grounds to estop Twin City from denying liability." Accordingly, the Court found that summary judgment was inappropriate on the counterclaim by Madison.

12

This Court does not read <u>Twin City</u> to stand for the proposition that knowledge is not relevant to the theory of equitable estoppel. Magistrate Judge Alexander addressed this argument in the Order on Motion for Reconsideration [165]. In that Order, the magistrate judge conceded that "Franklin's arguments regarding whether its knowledge is relevant to prove its counterclaim is a decision reserved for the trial judge and could lead to the ultimate disposition of Franklin's claims." However, she continued with the following analysis:

> No case law or applicable principle eliminates Franklin's duty to establish all the elements of its claim of equitable estoppel. Although the *Twin City* case found that coverage can exist even in circumstances where a policy would otherwise deny it, the exception is extremely limited. *Twin City Fire Ins. v. City of Madison*, 309 F.3d 901, 906 (5th Cir. 2002). *Twin Cit[y]* does not stand for the premise that the insurer becomes strictly liable for coverage when and if the insurer fails to advise the insured of its rights to independent counsel; rather the case stands for the proposition that where there is proof of all traditional elements of a claim of equitable estoppel,[] including reliance and prejudice, there may exist a genuine issue of material fact whether despite a policy exclusion the insurer may be liable for a breach of duties to its insured. *Id.* The case speaks in terms of facts and inferences to be drawn from the facts in deciding the coverage issue. That is exactly the situation presented in this case – whether the facts will fall in favor of Franklin's claim. For Franklin to prove or Liberty Mutual to defend against all necessary elements of the counterclaim – including reasonable reliance and resulting prejudice – there must be pre-trial discovery. The facts surrounding Franklin's knowledge of its *Moeller* rights are clearly relevant and material to that decision. In determining what discovery is appropriate under the Rules of Civil Procedure, the undersigned must determine whether (1) certain information and communications between Franklin and its attorneys is subject to the attorney-client privilege or work product doctrine and therefore protected from disclosure or (2) those protections were waived and the information required to be disclosed to the opposing party.

> Franklin has provided no law or argument that persuades the undersigned that the court's previous ruling that Franklin, and only Franklin – not the individually named defendants that were also parties to the underlying case – has waived the attorney-client privilege and the work product doctrine regarding information related to its counterclaims against Liberty Mutual.[] For this reason, the court holds that Franklin's motion for reconsideration of the court's May 1, 2008 Order is denied.

Order [165] dated July 23, 2008 (footnotes omitted).

The magistrate judge's Order [165] and analysis is hereby affirmed and adopted by this Court. As noted above, the elements of equitable estoppel have been cited to involve "an ignorance of true facts," Chapman, 473 So. 2d at 470, and reasonableness, PMZ Oil, 449 So. 2d at 206 (noting that for equitable estoppel doctrines to apply, "reasonableness on the part of the party seeking the benefit of [its] application is expected."). Franklin's knowledge or lack of knowledge as to its' Moeller rights is, therefore, relevant in order to prove the existence of the equitable estoppel elements.

Franklin has placed at the center of this litigation its' knowledge of those rights. Moreover, Franklin has attempted to assert the attorney-client privilege as a sword by asserting the counterclaim but failing to supply those communications which either supports that counterclaim or Liberty Mutual's defense. See Conkling, 883 F.2d at 434 (holding that attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."). Further, Franklin's complete reliance on Twin City for the proposition that knowledge is irrelevant is misplaced. Knowledge or lack of knowledge is necessary to prove the reasonableness of Franklin's reliance on Liberty Mutual's representations.

In addition to waiving the attorney-client privilege, Franklin has also waived the protections available to its' attorneys' work product as it relates to coverage and Moeller issues. As Magistrate Judge Alexander noted, the work product doctrine is very different from the attorney-client privilege. Unlike the attorney-client privilege, the protections of the work product doctrine are held by both the client and the attorney, and either may assert it. In re Grand Jury Proceedings, 43 F.3d 966, 970 (5th Cir. 1994). The work product doctrine does not exist to protect a confidential relationship but

to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. <u>United States v. American Tel. & Tel. Co.</u>, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

Still, its protections can be waived. Where a party puts in issue an attorney's opinion or work product – as in this case, where the issue of attorney's services and defense of the case, including settlement possibilities and failure to reasonably seek settlement – both the attorney-client privilege and protections afforded by the work product doctrine are waived. <u>Cincinnati Ins. Co v. Zurich Ins. Co</u>. 198 F.R.D. 81 (D.C. Cir. 2000). Franklin was, as it is in this case, represented by Mitchell, McNutt and Sams P.A. with respect to coverage issues surrounding the underlying state court action. The counterclaim in this case is Franklin's against Liberty Mutual. Thus, counsel's claim to the benefit of the doctrine cannot be separated here from that of the client in this case.

By filing its counterclaim alleging that Liberty Mutual did not make Franklin aware of its rights under Mississippi law to hire independent counsel at Liberty Mutual's expense to defend Franklin in the underlying case, Franklin has put in issue Liberty Mutual's obligations, the neglect of which Franklin now claims entitle it to relief:

> Liberty Mutual, however, in violation of its fiduciary obligations to Franklin, failed to notify Franklin that Liberty Mutual had a direct conflict of interest created by its decision to defend Franklin under a reservation of its rights, by its failure to enumerate those conflicts of interest so that Franklin could make a fully informed decision to protect its interests, and further failed to advise Franklin that Liberty Mutual was obligated under the law of Mississippi to inform Franklin that Liberty Mutual would pay for counsel of the selection of Franklin at the expense of Liberty Mutual and that Franklin would have the right to control the litigation through such counsel.

Franklin has alleged that "Liberty Mutual was grossly negligent in its so called defense of Franklin." These allegations and the remaining allegations of the counterclaim put the acts and omissions of

Liberty Mutual and the attorneys it hired for Franklin squarely in question in this case. As noted above, however, association in a joint defense does not automatically also subject the work product of other attorneys to disclosure. The protections of the work product doctrine may still be afforded to the attorneys for the individual Franklin defendants.

By telephonic status conference on November 13, 2008, the Court requested additional briefing from the parties regarding the possibility and practical implications of a limited discovery into the formerly-privileged materials. Upon submission of the plans from both parties, this Court thoroughly studied those proposals and ultimately determined that a "cabined inquiry" into the attorney-client privilege in this situation is untenable and difficult to practically implement.

This does not mean, however, that Franklin Corporation must divulge all formerly-privileged attorney-client communications or work product associated with the underlying litigation. The parties must strictly comply with the Federal Rules of Civil Procedure in conducting and producing discovery. In particular, Rule 26(b)(1), outlining the scope of discovery in general, provides that a party may obtain discovery regarding matters that are relevant to a party's claim or defense. While relevant evidence need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence, that discovery is warranted under the Federal Rules of Civil Procedure. FED. R. CIV. P. 26(b)(1). However, even though there has been a total waiver, not all of the formerly-privileged information becomes necessarily discoverable just because of the waiver of the attorney-client privilege or work product protection.

Therefore, this Court finds no error of law or fact with Magistrate Judge Alexander's Order [133] or Order on Motion for Reconsideration [172]. Without limiting those areas in which the magistrate judge found waiver, this Court finds the following discovery, including all written and

verbal communications regarding same, to be particularly relevant here:

▸ Franklin's knowledge, or lack of knowledge, of its <u>Moeller</u> rights;

▸ When Franklin learned of those rights and its' actions and reaction based on that knowledge; and

▸ Sandy Sams' advice and consultation with Franklin in the underlying state court action, if any, relative to Franklin's assertion of its' counterclaim.

The Court also reminds the parties that all privileged communications, whether related to coverage issues or not, between Franklin or its counsel and the law firm of Wise Carter after June 18, 2007, are protected from disclosure.

In light of the Court's conclusion that the magistrate judge was correct in her interpretation of the law and facts, the Court expressly overrules the following Objections and Appeals of the Magistrate Judge's Decisions:

[157] - By Order on Motion to Compel Answers to Discovery [150], Judge Alexander ruled that Franklin had to comply with the May 1, 2008, Order [133] in answering discovery. Specifically, the magistrate judge noted that previously confidential information otherwise protected by the attorney-client privilege and work product doctrine is now discoverable, but that discovery should be limited to case specific facts and not extend to the general knowledge of counsel.

The magistrate judge was not acting clearly erroneously or contrary to law by ordering Franklin's compliance with its' previous order. Therefore, the magistrate judge is affirmed as to this Order.

[179] - Magistrate Judge Alexander entered an Order on July 25, 2008, compelling discovery in this case but also denying a motion for reconsideration of the Court's May 21, 2008, Order filed

by Franklin. In that Order [150], the magistrate judge ordered Franklin to supplement its' discovery responses related to knowledge of <u>Moeller</u> rights, and particularly, testimony of Jeff Cox, Franklin's in-house counsel, and Franklin's coverage counsel. The attorneys' discoverable testimony was limited by the magistrate judge to case-specific facts and did not extend to general knowledge of counsel.

Franklin filed a Motion for Reconsideration based on the arguments presented to the Court in its Motion for Reconsideration of Order [133]. The magistrate judge found those arguments unpersuasive, and held that as no new evidence was presented that would warrant reconsideration, denied that reconsideration. Franklin appealed to this Court.

As noted above, this Court affirms the magistrate judge's Order [133]. Therefore, as Franklin has failed to prove that Judge Alexander's Order on Reconsideration [171] was clearly erroneous or contrary to law, this Court affirms that Order.

### D. Motion for Disqualification

By motion, Liberty Mutual seeks the disqualification of L.F. "Sandy" Sams from being attorney of record for Franklin Corporation [131]. Specifically, Liberty Mutual asserts that Sams is a necessary witness such that disqualification is mandated under Mississippi Rule of Professional Conduct 3.7. "Disqualification cases are governed by state and national ethical standards adopted by the court." <u>Fed. Deposit Ins. Co. v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304, 1311 (5th Cir. 1992). Moreover, "[m]otions to disqualify are substantive motions . . .[which are] decided under federal law." <u>Id</u>. at 1312. The Court further iterated:

> When reviewing the disqualification of an attorney, we must "consider the motion governed by the ethical rules announced by the national profession in the light of the public interest and the litigant's rights." [<u>In re Dresser Indus., Inc.</u>, 972 F.2d 540, 543

> (5th Cir. 1992)]. The norms embodied in the Model Rules and the Model Code are relevant to our inquiry, "as the national standards utilized by this circuit in ruling on disqualification motions." [In re] American Airlines, 972 F.2d 605, 610 (5th Cir. 1992) *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

Id. "The rule of disqualification is not mechanically applied in this Circuit." Church of Scientology of Cal. v. McLean, 615 F.2d 691, 693 (5th Cir. 1980). "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." FDIC, 50 F.3d at 1314.

The Rules of the Northern District of Mississippi specifically adopt the Mississippi Rules of Professional Conduct. See Unif. Loc. Rule 83.5. These rules are identical to the American Bar Association's Model Rules of Professional Conduct in all relevant aspects. United States v. Starnes, 157 Fed. Appx. 687, 693-94 (5th Cir. 2005).

> Mississippi Rule of Professional Conduct 3.7 provides:
>
> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness *unless precluded from doing so by Rule 1.7 or Rule 1.9.*

(emphasis added).

Franklin contends that others are available to testify as to these matters; therefore, Franklin argues, Sams is not a necessary witness. Indeed, a lawyer is not "likely to be a necessary witness" when evidence pertaining to each matter to which he could testify is available from another source.

19

Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 267 (5th Cir. 2001). In Horaist, for example, the Fifth Circuit held that because a lawyer's potential testimony was cumulative of other evidence (the potential testimony of other witnesses), the lawyer was not a necessary witness and the trial court did not err in refusing to disqualify him. Id.

Based on the above analysis regarding Franklin's waiver of the attorney-client privilege and work product protection, the Court is persuaded that Sandy Sams' testimony is relevant and necessary as to Franklin's knowledge of its Moeller rights, the reasonableness of Franklin's reliance on Liberty Mutual's representations or omissions, and any prejudice to Franklin on the basis of those representations or omissions. Although some of these topics were witnessed or could be testified to by others, Sandy Sams' representation of Franklin Corporation has clearly been put at issue in this lawsuit. As such, his testimony, whether favorable or adverse to Franklin, is necessary in this litigation.

Franklin also asks that if Sams is deemed to have discoverable information, this Court limit that discovery to written interrogatories. The Court finds, however, that as Sams is a necessary witness, the parties may notice and take his deposition. As noted in the above analysis, the Court has thoroughly investigated a way to limit the discovery in this case with a cabined inquiry; however, the Court has determined that there is no practical way to implement and enforce such inquiry.

The Court, mindful of the Fifth Circuit's directive that district courts exercise inherent power to take measures against conflicts of interest when they arise in connection with any proceeding before it, takes this opportunity to put on the record whether the disqualification of Sandy Sams necessarily leads to the disqualification of Mitchell McNutt & Sams. See United States v. Roark, 288 Fed. Appx. 182, 186 (5th Cir. Aug. 6, 2008). The second subpart to Rule 3.7 involves lawyers

in the same firm acting as the client's advocate even though a lawyer in that same firm is likely to be called as a witness. That rule does not preclude the entire law firm from representing that client unless they would be prevented by Rule 1.7 or 1.9.[3]

In this case, Liberty Mutual has not sought the disqualification of Sandy Sams due to any conflict of interest. Moreover, in a telephone conference held on November 13, 2008, counsel for Liberty Mutual acknowledged that they had no desire to disqualify Mitchell McNutt & Sams from this litigation.

The seminal case in the Fifth Circuit on disqualification of lawyers and imputation of the disqualification to the law firm is <u>FDIC v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304 (5th Cir. 1995). The district court granted a motion to disqualify two attorneys and their law firm, despite FDIC's informed consent to the representation. Ultimately, the Court affirmed the disqualification of one attorney, but vacated and remanded the matter back to the district court with instructions to deny the motion as to the law firm.

U.S. Fire filed the motion to disqualify on the grounds that the attorneys, Kenney and Hurt, would be called as witnesses in the underlying breach of contract litigation. The district court held that based on U.S. Fire's defenses of bad faith and discovery, each attorney was disqualified under Texas' Rules of Professional Conduct. Specifically, U.S. Fire's bad faith defense was predicated on Kenney's conduct during the claim investigation, in which U.S. Fire asserted that she withheld documents and caused unnecessary delay in determination of coverage. Using Model Rule 3.7, 1.7(b) and 1.10, the district court held that because Kenney's further representation would cause a

---

[3]Rule 1.9 concerns conflicts of interest involving a formerly represented client and is not dispositive here.

conflict of interest, her law firm was likewise disqualified. The district court "in deference to a perceived potential for an appearance of impropriety, chose to disqualify the firm." FDIC, 50 F.3d at 1313. The other attorney, Hurt, was disqualified, according to the district court, because his testimony relative to the discovery issue might be adverse to the FDIC.

In discussing the disqualification of the FDIC's law firm, the Court noted that the question presented before them was an "interlocutory inquiry of profound significance." Id. The Court further stated:

> The ability of the FDIC to present its case at trial will be impacted substantially if the firm that the FDIC has chosen to represent it must withdraw. Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.

FDIC, 50 F.3d at 1313.

In engaging in the fact intensive question of disqualification, the Fifth Circuit noted that based on the informed consent obtained by the law firm from the client for continued representation, the disqualification of the law firm would be unwarranted unless there was a "true conflict of interest" between Kenney and her client. The Court ultimately concluded there was not. As to Kenney, both parties conceded that the attorney was likely a necessary witness at trial.

The Fifth Circuit also held that "application of the disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice." Cossette v. Country Style Donuts, Inc., 647 F.2d 526, 530 (5th Cir. 1981). However, "disqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred." FDIC, 50 F.3d at 1316 (citing Woods v. Covington County Bank, 537 F.2d 804, 813 (5th Cir. 1976)). Therefore, notwithstanding the "fundamental importance of safeguarding popular

confidence in the integrity of the legal system," disqualification of an entire firm "is a sanction that must not be imposed cavalierly." Id.

Therefore, the Fifth Circuit affirmed the district court's disqualification of one attorney for being a necessary witness to the litigation, and vacated the disqualification of the entire law firm based on the lack of actual conflict of interest between another attorney and the client.

Here, Sandy Sams' disqualification is not based on a conflict of interest between himself and Franklin Corporation; it is premised on his status as a necessary witness. Therefore, based on the Fifth Circuit's concern that a party choose its' own representation, this Court will not *sua sponte* disqualify the entire Mitchell McNutt & Sams law firm.

If indeed both parties agree to the continued representation of Franklin Corporation by the Mitchell McNutt & Sams law firm, the parties are directed to place on the record evidence of the informed consent of the parties to this litigation.

*C. Motion for Summary Judgment as to Franklin's Counterclaim*

Also pending before this Court is Liberty Mutual's Motion for Summary Judgment as to Franklin's Counterclaim [80]. Liberty Mutual contends that because Franklin claims its' communications are protected by the attorney-client privilege, they cannot establish the elements of their claim on which they would bear the burden of proof; therefore, the estoppel claim should be dismissed.

As noted above, the magistrate judge correctly held that Franklin waived the attorney-client privilege and work product doctrine with respect to the following between Franklin and Mitchell McNutt & Sams; Franklin, Mitchell McNutt & Sams, and Wise Carter & Caraway; and Franklin or its attorneys and the Daniel Coker law firm.

Therefore, those communications are discoverable, and Liberty Mutual's Motion for Summary Judgment on this ground is premature in light of the ruling of this Court. Thus, Liberty Mutual's Motion for Summary Judgment is dismissed as being premature. Liberty Mutual may refile this motion at the expiration of the discovery deadline if it wishes.

### D. Conclusion

Franklin has failed to prove that the Magistrate Judge's Orders docketed under CM/ECF numbers 133, 165, 150, and 171, were clearly erroneous or contrary to law. Thus, the magistrate judge is affirmed as to all appeals filed by the Defendant. In affirming the magistrate judge, this Court reiterates here that Franklin's assertion of a counterclaim based on equitable estoppel necessarily waives their attorney-client privilege and work product privilege but is limited to evidence that is relevant to the assertion or defense of the counterclaim. The parties are encouraged to work out any and all discovery disputes between themselves as objectively as they can prior to bringing those disputes to the court.

The parties are also directed to enter into the record within fifteen days of this Order, notice of informed consent and an informed consent waiver signed by all parties specifying that no party objects to the continued representation of Franklin Corporation by the Mitchell McNutt & Sams law firm.

As discovery will soon ensue regarding these now-unprivileged communications and productions, Liberty Mutual's Motion for Summary Judgment on Franklin's Counterclaim is premature and therefore moot. Liberty Mutual is free to re-file this motion once discovery has been completed as to this claim.

Counsel are instructed to notify the magistrate judge within ten days of the date of this Order

for a revised scheduling order and new trial date.

SO ORDERED, this the 9th day of February, 2009.


 **/s/ Sharion Aycock**
**U.S. District Judge**