**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**LIBERTY MUTUAL INSURANCE COMPANY, et al.**                    **PLAINTIFFS**

**v.**                                                    **CAUSE NO. 3:07CV73-SA-SAA**

**PAULINE TEDFORD, et al.**                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

Comes now before this Court, Plaintiff Liberty Mutual Insurance Company's Motion for Partial Summary Judgment [10] and Supplement to that motion [243], Defendant Franklin Corporation's Motion for Partial Summary Judgment [164], and Liberty Mutual's Cross Motion for Partial Summary Judgment [175], and Motion for Summary Judgment as to Defendant's Counterclaim [273].

After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Liberty Mutual Insurance Company ("Liberty Mutual") has filed this declaratory judgment action seeking reimbursement of defense fees, workers' compensation benefits and costs arising out of a state court case against Franklin Corporation ("Franklin") and other individual defendants. In the state court case, the underlying plaintiffs[1] claimed that Franklin's failure to provide adequate ventilation and protective gear from an adhesive used in the furniture production process caused the employees' injury and damages.

---

[1]Pauline Tedford, Lora Smith, Judy Haire, and Samantha Mixon are referred to throughout the pleadings and motions filed in this case as the "Underlying Plaintiffs." Therefore, the Court also uses this term to represent those individuals who filed and pursued the underlying state court action.

Liberty Mutual issued Workers' Compensation and Employers Liability policies ("WC/ELP") to Franklin in effect during the time periods relevant to the state court case and claims. Liberty Mutual paid claims by each of the state court plaintiffs under the workers' compensation policies and enlisted and paid for the services of Tim Crawley, a Liberty Mutual panel lawyer, to defend Franklin in the underlying state court suit. Pursuant to that defense provided by the insurer, Liberty Mutual sent to Franklin a "reservation of rights" letter.[2] That letter specifically noted that the insurer "determined that the allegations in the complaint create a question of potential coverage under the [WC/ELP] policies."[3] However, Liberty Mutual particularly "reserve[d] the right to withdraw our defense and deny indemnity if facts should develop which establish a lack of coverage under our policy, or if all potentially covered allegations or counts are dismissed from the action."[4] Liberty Mutual additionally reserved the right to "apportion defense fees and costs between the covered and non-covered claims," or alternatively, to "seek reimbursement from Franklin for defense fees and costs paid in connection with claims or causes of action not covered by our policy."[5]

After a three week trial of the matter,[6] a state court jury returned a substantial verdict, including punitive damages, against Franklin. The Mississippi Supreme Court affirmed that verdict

---

[2]In fact, Liberty Mutual sent four reservation of rights letters each on the following dates: September 8, 2004, November 9, 2004, January 4, 2005, and September 26, 2006.

[3]See Sept. 8, 2004, Letter from Doug Morgan, Technical Claims Specialist for Liberty Mutual, to Barry Ard of Franklin Corporation; and Jan. 4, 2005, Letter from Doug Morgan to Barry Ard of Franklin Corporation.

[4]See Jan. 4, 2005, Letter from Doug Morgan to Barry Ard of Franklin Corporation.

[5]See Jan. 4, 2005, Letter from Doug Morgan to Barry Ard of Franklin Corporation.

[6]The trial of the underlying matter took place from May 7, 2007, through May 25, 2007.

on April 16, 2009.[7]

Liberty Mutual filed this action on June 18, 2007, seeking a declaration that (1) Liberty Mutual does not and never has had any defense or coverage obligations under the Workers' Compensation and Employers Liability Policies with respect to the underlying civil action; (2) Liberty Mutual does not and never has had any defense obligation to Franklin under the WC/ELP with respect to the underlying civil action and resulting jury verdict; (3) Liberty Mutual does not have any indemnity obligations to Franklin under the WC/ELP for any compensatory or punitive damages awarded to the underlying plaintiffs in the underlying civil action; (4) Liberty Mutual does not have any indemnity obligations to Franklin under the WC/ELP for any settlements that Franklin may reach in connection with the underlying civil action; and (5) the WC/ELP beginning on the dates March 1, 1999, March 1, 2001, and March 1, 2002, provide no coverage for any claims against Franklin for the additional reason that the last day of exposure claimed by all underlying plaintiffs did not occur during the policy periods of those policies.

Franklin answered and filed a counterclaim alleging that Liberty Mutual failed to inform Franklin of any potential conflicts of interest between the insurer and its insured. Franklin claims that had Liberty Mutual advised it of its right pursuant to Mississippi law to have independent counsel and of the conflicts of interests between it and its insurer, it could have demanded independent counsel and controlled its defense in the underlying case. According to Franklin, by this failure, Liberty Mutual breached its fiduciary duties to Franklin and is now estopped from denying coverage and seeking reimbursement and defense costs from Franklin.

---

[7]The Mississippi Supreme Court denied Franklin's Motion for Rehearing in the underlying civil action on September 10, 2009. However, at the time of the filing of this Opinion, the mandate had not been issued by that Court.

Franklin asks that the court exonerate Franklin from all claims brought by Liberty Mutual and seeks damages from Liberty Mutual by way of its counterclaim. Franklin asserts that it is entitled to full coverage for all claims asserted against it in the underlying action both with respect to the duty to defend and the duty to indemnify. Franklin also asserts that Liberty Mutual was grossly negligent in its defense of Franklin and actions by Liberty Mutual rise to the level of bad faith.

Four motions for summary judgment have been filed in this matter. In Liberty Mutual's first Motion for Partial Summary Judgment [10] and attendant Supplement [243], the Plaintiff asserts that the policies of insurance provide no coverage to Franklin for its intentional acts. Moreover, because the insurance policies prohibit coverage for intentional acts, Liberty Mutual asserts it owed no duty to defend Franklin in the underlying civil action and any subsequent appeal. Franklin responded that Liberty Mutual is equitably estopped from denying their duty to defend and must provide coverage for failing to advise the insured of its' <u>Moeller</u> rights.

Franklin filed a Motion for Partial Summary Judgment [164] requesting that this Court dismiss Plaintiff's claims for recovery of defense costs expended on Franklin's behalf in the underlying civil action. Particularly, Franklin alleges that the duty to defend depends on the allegations of the underlying complaint; thus, Liberty Mutual cannot recoup defense costs based solely on the outcome of the underlying litigation. In response, Liberty Mutual filed its Cross-Motion for Summary Judgment [175] countering that the reservation of rights letter sent to Franklin explicitly reserved a right to seek reimbursement for defense costs and further constituted an implied in fact contract.

Finally, Liberty Mutual moved for summary judgment on Franklin's counterclaim [273] and asserts that Franklin has not proved that they reasonably relied on any representation of Liberty

Mutual which would equitably estop Plaintiff from denying coverage of the claims against Franklin. In response, Franklin asserts that genuine issues of material fact preclude this Court's grant of summary judgment on that basis.

*Summary Judgment Standard*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*Discussion and Analysis*

*A. Coverage under the WC/ELP Insurance Contract*

Liberty Mutual contends that the WC/ELP insurance policy's intentional acts exclusion relieves them of any duty to cover the claims asserted against Franklin by the underlying plaintiffs. Liberty Mutual issued WC/ELP insurance policies to Franklin from 1999 until 2004 with the exception of one year, 2000-2001.[8] It was under this workers' compensation policy that Liberty Mutual paid benefits to the underlying plaintiffs before the state court suit was filed. Moreover, it was under these policies that Liberty Mutual determined there to be a potential duty to defend.[9] Part Two of the WC/ELP provides coverage for claims of accidental bodily injury arising out of and in the course of the injured employee's employment. That section also acknowledges coverage of bodily injury by disease as long as that affliction is caused or aggravated by the conditions of employment. The policies further require that the "employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period." Therefore, Liberty Mutual asserts that under the insurance policy language, only the policies in effect from March 1, 2003, through March 1, 2005,[10] are applicable.

---

[8]Liberty Mutual also issued two Commercial General Liability Insurance policies, TB7-151-097401-028 and TB7-151-097401-029, in effect from March 1, 1998 until March 1, 2000, which are not at issue in this declaratory action. See Complaint [48], ¶ 12b.

[9]See Jan. 4, 2005, Reservation of Rights Letter from Doug Morgan to Barry Ard ("No coverage is afforded under Part One of the policies, because the plaintiffs do not seek any benefits under the workers' compensation laws"; however, "[b]ecause the plaintiffs allege damages potentially covered by Part Two of the policy, we have a duty to defend Franklin against this complaint, subject to the position outlined in this letter.").

[10]Those policies are referenced as WC1-151-097401-223 and WC1-151-097401-224 in the pleadings.

According to the underlying complaint, the following dates are the underlying plaintiffs' last day of last exposure to the spray adhesive at Franklin Corporation: Tedford - April 22, 2004; Smith - January 27, 2004; Haire - February 9, 2004; and Mixon - February 14, 2004.

According to the policies, coverage for bodily injury by disease is only afforded under the policy in which the "employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease" falls. The underlying plaintiffs' last days of last exposure occur in January, February, and April of 2004. Thus, the WC/ELP policies with effective dates of March 1, 2003 through March 1, 2004, and March 1, 2004 through March 1, 2005, are applicable here.

More relevant here than what is covered, is what is not contractually covered. The WC/ELP policies in place exclude "bodily injury intentionally caused or aggravated by [the insured]." Franklin contends that Liberty Mutual's failure to define the words "intentional," "bodily injury," and "disease" make the contract ambiguous and, therefore, unenforceable against the insured.

There is an ambiguity in an insurance contract when the policy can be interpreted as having two or more reasonable meanings. Universal Underwriters Ins. Co. v. Ford, 734 So. 2d 173, 176 (Miss. 1999); J & W Foods Corp. v. State Farm Mut. Ins. Co., 723 So. 2d 550, 552 (Miss. 1998). Cf. Burton v. Choctaw County, 730 So. 2d 1, 6 (Miss. 1997) (simply because the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law). In this case, the definition of the words "intentional," "bodily injury," and "disease" are not pertinent and do not lend themselves, for purposes of this inquiry, to any reasonable interpretation other than the insurance policy does not cover the effects of the insured's actions undertaken with the intent to injure. The provision excluding coverage for injury intentionally caused by the insured is by no means technical or obscure. This Court is bound to enforce contract language as written and

give it its plain and ordinary meaning if it is clear and unambiguous. Jackson v. Daley, 739 So. 2d 1031, 1041 (Miss. 1999); Lewis v. Allstate Ins. Co., 730 So. 2d 65, 68 (Miss. 1998); Nat'l Bankers Life Ins. Co. v. Cabler, 229 Miss. 118, 125, 90 So. 2d 201, 204 (1956); Farmers Mut. Ins. Ass'n v. Martin, 226 Miss. 515, 521, 84 So. 2d 688, 690 (1956). The Court must give effect here to the valid, clear and unambiguous contract terms where there is no statutory or public policy prohibition nullifying them. See Miss. Farm Bur. Cas. Ins. Co. v. Britt, 826 So. 2d 1261, 1266 (Miss. 2002). Thus, Franklin can not use Liberty Mutual's failure to define those common terms as a sword to nullify the insurance policy.

The underlying plaintiffs filed their complaint in the Calhoun County Circuit Court alleging *inter alia*, misrepresentation, battery, intentional infliction of emotional distress, fraud and intentional misrepresentation, and civil conspiracy against Franklin. The complaint stated that the underlying plaintiffs' claims were based on negligent and intentional conduct of the defendants. Franklin filed a motion to dismiss relying on the "exclusive remedy" provision of the Mississippi Workers' Compensation Act. See Miss. Code Ann. § 71-3-9 (mandating that liability of an employer to pay compensation to an employee be brought exclusively under the provisions of the Mississippi Workers' Compensation Act). The trial judge denied the motion on November 29, 2004, noting that the underlying plaintiffs had alleged sufficient facts to satisfy the intentional tort exception to the Mississippi Workers' Compensation Act. See Griffin v. Futorian Corp., 533 So. 2d 461, 463 (Miss. 1998) (explaining that in order to avoid the exclusivity of the Mississippi Workers' Compensation Act, two elements must be met: (1) the injury must be caused by the willful act of the employer; and (2) the injury must be one that is not compensable under the Act). At the conclusion of the three week trial, a jury found for the underlying plaintiffs and awarded damages against Franklin for

battery and intentional infliction of emotional distress.

On April 16, 2009, the Mississippi Supreme Court affirmed the trial judge's denial of Franklin's motion to dismiss and found no reversible error in the court's instructions to the jury on the definition of intentional. The majority upheld the Amended Final Judgment, thus affirming the jury verdict that Franklin acted with the actual intent to injure the underlying plaintiffs. Thus, according to a Calhoun County jury and the Mississippi Supreme Court, Franklin's acts were intentional.

As noted above, the WC/ELP policies at issue exclude "bodily injury intentionally caused or aggravated" by the insured. Thus, based on the language of the WC/ELP insurance policies and this Court's understanding of the underlying case, Franklin's intentional acts, for which it was found liable in the underlying state court action, are not covered under the express provisions of the WC/ELP policies issued by Liberty Mutual. Accordingly, under the WC/ELP policies at issue, and the intentional acts exclusion in particular, Liberty Mutual owes no duty of coverage to Franklin for the underlying civil action.

However, this determination that Liberty Mutual owes no coverage obligation under the WC/ELP does not necessarily absolve Liberty Mutual of the duty to provide that coverage. Franklin may still be owed coverage under the equitable doctrine of coverage by estoppel.

B. *Coverage by Estoppel*

Franklin counterclaims that even if the WC/ELP does not explicitly oblige Liberty Mutual to cover the underlying state court action, Liberty Mutual is estopped from denying such coverage based on its failure to comply with its judicially-imposed responsibility. Franklin's counterclaims are primarily based on the principle outlined in <u>Moeller v. American Guarantee & Liability Insurance</u>

Company, 707 So. 2d 1062 (Miss. 1996).

In Moeller, the Mississippi Supreme Court recognized that an "insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured." Id. at 1069 (citing State Farm Mut. Auto. Ins. Co. v. Acosta, 479 So. 2d 1089, 1092 (Miss. 1985)). The Court noted that defending under a reservation of rights creates a conflict of interest between the insured and insurer, and therefore, a "special obligation is placed upon the insurance carrier." Id. That obligation requires the insurer's attorney to "undertake to represent only the interest of the insurance carrier for the part covered, and the insurance carrier should afford the insured ample opportunity to select his own independent counsel to look after his interest." Id. at 1070 (citing Hartford Acc. & Indem. Co. v. Foster, 528 So. 2d 255, 269 (Miss. 1988); State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co., 394 So. 2d 890, 894 (Miss. 1981); and Anthony v. Frith, 394 So. 2d 867 (Miss. 1981)). Thus, Moeller stands for the proposition that when a conflict of interest arises between an insured and the insurer, particularly through a reservation of rights or the situation in which some claims are clearly not covered by the insurance policy, the insurer is under an obligation to permit the insured to select his or her own individual counsel with the fees and costs to be paid by the insurer. See Hartford Underwriters Ins. Co. v. Found. Health Servs., 524 F.3d 588, 597 (5th Cir. 2008) (the "duty to provide independent counsel when defending under a reservation of rights in Mississippi state courts is directly related to Mississippi's interest in preventing conflicts of interest in litigation").

Franklin asserts that because Liberty Mutual failed to notify Franklin of a direct conflict of interest created by its decision to defend Franklin under a reservation of rights, and failed to advise Franklin that it was obliged to pay for alternate counsel selected by Franklin, Franklin is entitled to

coverage of all claims asserted against it in the underlying action. Thus, Franklin asserts that Liberty Mutual is estopped from denying coverage under its insurance policies due to its failure to notify Franklin of its rights.

The Fifth Circuit has recognized a claim of "coverage by estoppel" based on the mandates of Moeller. Twin City Fire Ins. Co. v. City of Madison, 309 F.3d 901, 906 (5th Cir. 2002) ("The district court concluded that, as a matter of law, estoppel cannot expand coverage in the face of an otherwise applicable policy exclusion. We disagree.").

The burden of establishing the elements of an estoppel by a preponderance of the evidence is on the party asserting the estoppel. Hathorn v. Illinois Cent. Gulf R.R. Co., 374 So. 2d 813, 817 (Miss. 1979); Gates v. Owen Chevrolet Co., 294 So. 2d 179, 180 (Miss. 1974). Equitable estoppel "precludes a party from denying a material fact which has previously induced another to rely upon, whereby the second party changed his position in such a way that he would suffer injury if denial was allowed." Butler v. City of Eupora, 725 So. 2d 158, 160 (Miss. 1998). Under Mississippi law, equitable estoppel exists where there is a "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 492 (Miss. 2005) (citing Cothern v. Vickers, Inc., 759 So. 2d 1241, 1249 (Miss. 2000), and Covington County v. Page, 456 So. 2d 739, 741 (Miss. 1984)). For equitable estoppel doctrines to apply, "reasonableness on the part of the party seeking the benefit of [its] application is expected." PMZ Oil Co. v. Lucroy, 449 So. 2d 201, 206 (Miss. 1984).

In Twin City, the insurer sued the City of Madison for a declaratory judgment denying coverage for an underlying lawsuit and for reimbursement of the settlement amount in that action.

309 F.3d at 903. Madison counterclaimed asserting coverage and liability based on estoppel. Id. The district court granted summary judgment to the insurer holding that the policy exclusion applied and held that Twin City, the insurer, was entitled to reimbursement for the amount paid in settlement of the underlying claims against the insured. Id. The Fifth Circuit affirmed the district court's determination that the policy excluded coverage[11] but reversed the grant of summary judgment on the counterclaim and found fact questions material to the issue of estoppel. Id. at 903, 904.

In the underlying action against the City, Madison demanded a defense and indemnity and Twin City appointed counsel under a reservation of rights. Id. at 905. As in this case, the insurer failed to notify the insured of its Moeller rights or the inherent conflicts of interest between the insured and insurer pursuant to that defense. Id.[12]

The Fifth Circuit held that Twin City's failure to notify the City of its Moeller rights and the conflicts of interest between the parties specifically implicated their duty to defend. Id. at 906. In addition, "[w]hen the alleged misconduct of the insurer concerns the duty to defend the insurer may be liable despite an exclusion otherwise applicable." Id.

After analyzing Twin City's reservation of rights letters and acknowledging the stage of litigation at which they were sent, the court stated:

> If an insurer is defending under a reservation of rights, "the insured should be immediately notified of a possible conflict of interest between his interests and the

---

[11]The court noted that it had to review the district court's decision that the City's conduct was excluded under the insurance policy in the event that the fact finder determined that the insurer was not estopped from denying coverage. Twin City, 309 F.3d at 904 n.1.

[12]The court identified as conflicts in that case the fact that while the hired defense counsel wanted coverage for his client the City, the insurer sought to avoid coverage. Id. at 905. As well, the fact that defense counsel reported to both insured and insurer regarding the defense of the matter. Id.

> interests of his insurance company so as to enable him to give informed consideration to the retention of other counsel." 7C John Alan Appleman, Appleman Insurance Law & Practice § 4694 at 365 (1979). When an insurer is defending under a reservation of rights, the carrier "should afford the insured ample opportunity to select his own independent counsel to look after his interest." Moeller, 707 So. 2d at 1070.

Id. at 907. The court held that the City presented an issue for trial merely by offering evidence that the reservation of rights letters did not allow the opportunity to the insured to select its own independent counsel. Id. Moreover, the court found conflicting inferences regarding the notice of conflicts of interest as well as the insured's informed consent to continue with the insurance company-provided defense. Id. Specifically, there was a question as to whether the insured was aware of the conflicts of interest between the insurer and insured or whether the insured was aware of the extent of those conflicts. Id. The court rejected the notion that the City's independent counsel bore responsibility for discerning those conflicts. Id. (noting that "[t]he duty is on the insurer, not the insured, to determine whether a conflict exists and to notify the insured.").

Furthermore, the court intimated that the failure to notify the insured of conflicts of interest acts as a withdrawal of defense or breach of the duty to defend. Id. at 906, 907-08 (recognizing Moeller's admonition that a law firm that is not one hundred percent faithful to the interests of its clients offers no defense at all (citing Moeller, 707 So. 2d at 1071)). Therefore, the insurer was prevented from denying liability upon the insured showing that prejudice resulted. Id. at 908. The court then stated, "The evidence presents a genuine issue of fact regarding prejudice because the very ruling obtained by [the hired defense counsel] in favor of the City . . . was used against the City in this coverage dispute." Id. Further, the court commented that Madison's discovery the month before trial of the underlying case that the insurer hired counsel to defeat coverage was evidence upon

which a reasonable fact finder could ascertain prejudice.  The court found that "[b]ecause these fact issues are germane to the question whether Twin City discharged its duty to defend or mishandled the claim, they may provide grounds to estop Twin City from denying liability." Id.

Liberty Mutual asserts that Franklin cannot establish the essential elements of an equitable estoppel claim because it had actual knowledge of its' Moeller rights.  Therefore, Liberty Mutual asserts that Franklin did not reasonably rely on any representation or omission by Liberty Mutual, did not change its position based on those representations, and did not suffer any detriment or prejudice due to Liberty Mutual's failure to advise Franklin of its right to independent counsel. Particularly, Liberty Mutual points to the deposition testimony and records of L.F. Sams, Franklin's outside counsel hired to advise that company of coverage issues, to prove that Franklin knew of its rights and made an informed, deliberate, and knowing decision not to assert them.

It is undisputed in this case that Liberty Mutual never informed Franklin of its Moeller rights or any conflicts of interest created by the insurer's defense pursuant to a reservation of rights. Nevertheless, Franklin did have knowledge of their right to independent defense counsel at the expense of the insurer.  On February 21, 2005, Sams and his law firm prepared a memorandum and analysis of an insured's rights pursuant to Moeller which was then sent to Jeff Cox, Franklin's in-house counsel, along with correspondence regarding those rights from Sams.  The letter and attendant memo do not explicitly discuss the conflicts of interest between Liberty Mutual and Franklin.  However, the memorandum does outline general conflicts of interest between insureds and insurers.  The memorandum further acknowledges the reservation of rights letter and states that Franklin may want to use the threat of retaining Moeller counsel to encourage Liberty Mutual to defend without a reservation of rights.

Jeff Cox testified that Sams did not fail to adequately inform him of his <u>Moeller</u> rights, and that Sams provided Cox with enough information to make an intelligent, knowing decision regarding those rights. However, pursuant to <u>Twin City</u>, there is no evidence that Franklin was made aware of the specific conflicts of interest or the extent of those conflicts between Liberty Mutual and Franklin. Moreover, the record reflects that Tim Crawley, counsel provided by the insurer, reported developments in the underlying case to both Liberty Mutual and Franklin. Further, the verdict in the state court action that Franklin's acts were intentional has been used in this declaratory action to specifically disclaim coverage. In the course of this trial, evidence has surfaced that Liberty Mutual contacted another law firm prior to the jury's verdict in the underlying case regarding Liberty Mutual's ability to defeat coverage.

After his discussion with Sams regarding Franklin's <u>Moeller</u> rights, Cox testified that he made the decision not to assert those rights. Cox specifically remarked that Liberty Mutual's failure to advise Franklin of its right to employ separate counsel caused him to believe that invoking that right would run Liberty Mutual off as an insurer who would pay for Franklin's defense. Thus, because Liberty Mutual did not explicitly notify Franklin of its <u>Moeller</u> rights, Franklin may have relied on that omission in making the decision to not request independent counsel on the assumption that it might cause Liberty Mutual to retreat from defending Franklin at all. Jeff Cox decided not to risk Liberty Mutual withdrawing its defense completely, so Franklin agreed with Tim Crawley's representation of them. Whether this reliance was reasonable is a jury question.

In light of the Fifth Circuit's ruling in <u>Twin City</u>, this Court finds that Franklin has also presented a question of fact as to the prejudice it may have suffered due to Liberty Mutual's failure to advise it of its rights or the conflicts created by the reservation of rights. In <u>Twin City</u>, the court

acknowledged that an adverse ruling in the underlying action was sufficient to create a fact issue of prejudice. 309 F.3d at 908. In the underlying case at issue here, underlying plaintiffs were awarded over seven million dollars for Franklin's intentional acts. Thus, Franklin has raised a genuine issue of material fact as to whether Liberty Mutual's failure to advise them of their rights caused them prejudice.

Franklin also alleges prejudice in the handling of the state court case. Specifically, Franklin references the false sense of security its defense counsel gave prior to trial. Tim Crawley, Franklin's defense counsel hired by Liberty Mutual, issued a written evaluation on May 4, 2007, which indicated a fifty-fifty chance of Franklin prevailing at trial. Cox recalled a prior letter from Crawley indicating a seventy to eighty percent chance of success. Cox also discussed the common feeling of the litigators and those involved in the underlying case that if Franklin did not prevail at trial, they would ultimately prevail on appeal. Cox testified that while he was not in a position to question how the defense of Franklin during the trial was being conducted, Franklin's Chief Executive Officer, Hassell Franklin, was very dissatisfied with defense counsel's performance at trial. Cox did state that because of his unease with the progression of the case, prior to trial he asked defense counsel whether they needed more help in preparation for trial. He noted that defense counsel assured him that they were comfortable with their ability to defend the case.

Cox further remarked that he was very disappointed at Liberty Mutual's counsel's effort in the post-trial motion phase of the underlying action. Moreover, Franklin contends that Liberty Mutual made no effort to settle the underlying civil action prior to the verdict of the jury. Franklin asserts that it was to their detriment to not settle the case prior to the jury verdict. When pressed on the issue, Cox pronounced that had he been advised by Liberty Mutual that Franklin had the right

to chose independent counsel, Tim Crawley would not have been the counsel Franklin retained.

Because Franklin has presented genuine issues of material fact as to whether Liberty Mutual should be equitably estopped from denying coverage, the Court is unable at this time to address whether Liberty Mutual has the duty of indemnity or coverage.  Accordingly, the motions for partial summary judgment as to Franklin's equitable estoppel claim and Liberty Mutual's duty of indemnity and coverage are denied.

### C.  Duty to Defend

Liberty Mutual seeks a declaration that it owed Franklin Corporation no duty to defend because the claims asserted against Franklin in the underlying case are not covered by the insurance policy.  Franklin counters that the insurer's duty to defend is based on the allegations in the underlying complaint.  Further, Franklin argues that Liberty Mutual can not recoup the defense costs based solely on the outcome of the litigation.

The law governing the interpretation of insurance contracts is well settled in Mississippi. In determining whether Liberty Mutual owes Franklin a duty to defend or indemnify, the Court looks to the allegations in the underlying state court complaint. See Sennett v. U.S. Fidelity & Guar. Co., 757 So. 2d 206, 212 (Miss. 2000). "If the complaint states a claim that is within or arguably within the scope of coverage provided by the policy," Liberty Mutual is obliged to defend and, if necessary, indemnify Franklin. Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 610 (5th Cir. 2001) (citing Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 383 (5th Cir. 1998); and State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So. 2d 1371, 1373 (Miss. 1981)).  Moreover, under Mississippi law, "any doubt as to the existence of a defense obligation is . . . resolved in favor of the insured." Liberty Mutual Fire Ins. Co. v. Canal Ins. Co., 177 F.3d 326, 331 (5th Cir. 1999). In

comparing the complaints with the policy terms, we look not to the particular legal theories pursued by the state complainants, but to the allegedly tortious conduct underlying their suits. <u>See</u> <u>Equal Employment Opportunity Comm'n v. Southern Publ'g Co.</u>, 894 F.2d 785, 790-91 (5th Cir. 1990) ("Under Mississippi's 'allegations of the complaint' rule if the factual allegations of the complaint bring the action within coverage of the policy, the insurer has a duty to defend.").

Liberty Mutual is justified in refusing to defend only if it is clear from the face of the state court complaint that the allegations therein are not covered. <u>See</u> <u>Merchants Co. v. American Motorists Ins. Co.</u>, 794 F. Supp. 611, 617 (S.D. Miss. 1992) ("The duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy"). Furthermore, a duty to defend extends to all actions brought against an insured on the allegation of facts and circumstances covered by the policy, even though such suits may be groundless, false or fraudulent. <u>State Farm Mut. Auto. Ins. Co. v. Taylor</u>, 233 So. 2d 805, 808 (Miss. 1970).

On August 17, 2004, the underlying plaintiffs filed a complaint in the Circuit Court of Calhoun County. A review of that complaint evidences allegations against Franklin centering around the company's failure to provide ventilation or protective equipment to the workers on the glue line and failure to warn those employees of the dangers associated with the adhesive product. Underlying plaintiffs pled as causes of action against Franklin misrepresentation, battery, intentional infliction of emotional distress, fraud, intentional misrepresentation, and civil conspiracy. The complaint also proclaims "as a direct result of the negligent, as well as intentional acts and/or omissions of Defendants, Plaintiffs have suffered serious injuries." Based on the factual allegations contained in the complaint and the specific causes of action against Franklin, underlying plaintiffs' claims were

arguably within the scope of coverage provided in the WC/ELP.

Internal emails within Liberty Mutual evidence that Doug Morgan, claims analyst, assumed Franklin would be dismissed from the suit based on the exclusivity provision of the Mississippi Workers' Compensation Act. On November 29, 2004, the trial judge denied Franklin's motion to dismiss holding that the underlying plaintiffs sufficiently pled facts and asserted claims not preempted by the Mississippi Workers' Compensation Act. In the reservation of rights letter sent after that ruling, Morgan, on behalf of Liberty Mutual, expressly acknowledged that "[b]ecause the plaintiffs allege damages potentially covered by [the Employers Liability section] of the policy, [Liberty Mutual] has a duty to defend Franklin against the complaint . . ." Doug Morgan testified that the allegation of negligence within the complaint triggered Liberty Mutual's coverage for defense of the matter. Morgan testified that Liberty Mutual's continued defense of Franklin, even though the court plainly held that the underlying plaintiffs were not alleging negligent conduct, was based on "giv[ing] the benefit of the doubt to our customers." He correctly commented that the duty to defend is much greater than the duty to indemnify.

Accordingly, based on the allegations of the underlying complaint, Liberty Mutual did have a duty to defend Franklin in the state court matter. Furthermore, Liberty Mutual's continued defense, or failure to withdraw the provided defense, after the trial court's November 29, 2004, ruling implies that Liberty Mutual elected to defend Franklin in light of the fact that the remaining claims were potentially not subject to coverage after that date. Thus, Liberty Mutual's Motion for Partial Summary Judgment [10] is denied as to its request for this Court to absolve its duty to defend.

### D. Duty to Reimburse

Liberty Mutual asserts that because there was no potential for coverage of the underlying

plaintiffs' claims against Franklin, Liberty Mutual is entitled to a reimbursement for defense fees and costs paid on behalf of Franklin. Specifically, Liberty Mutual declares that the reservation of rights letters reserved the right to apportion defense fees and costs between covered and non-covered claims, as well as the right to seek reimbursement for defense costs paid for claims not covered by the policy. The insurer contends this reservation of rights letter and Franklin's acknowledgment of those asserted rights constitutes an implied in fact contract. Franklin argues that because of Mississippi's emphasis on protecting the interests of the insured and the lack of Mississippi case law allowing reimbursement of defense costs, this Court should deny Liberty Mutual's request for reimbursement. Moreover, Franklin claims that Mississippi's Volunteer Rule prohibits recovery of payments made without the threat of compulsion.

As noted above, Liberty Mutual defended Franklin in the underlying suit based on the WC/ELP policies issued by Liberty Mutual. That insurance contract grants to Liberty Mutual the "right and duty to defend, at [Liberty Mutual] expense, any claim, proceeding, or suit against [Franklin] for damages payable by this insurance." There is no provision allowing or giving Liberty Mutual the right to be reimbursed for defense fees and costs paid for causes of action not covered under the insurance policies.

Liberty Mutual issued four reservation of rights letters.[13] The first, dated September 8, 2004, recognized that the allegations of the complaint created a question of potential coverage and included the general language that "Liberty Mutual reserves all rights under applicable law and the policies." There is no assertion of a right of reimbursement in the letter of September 8, 2004. The third letter,

---

[13]The Court was unable to find the second reservation of rights letter, dated November 9, 2004, in the record.

dated January 4, 2005, explained Liberty Mutual's potential duties under the insurance policy and noted that "Liberty Mutual reserves all rights under applicable law and the policy, including the right to apportion defense fees and costs . . . or, in the alternative, seek reimbursement from Franklin for defense fees and costs paid in connection with the claims or causes of action not covered by our policy." The last letter, dated September 25, 2006, also contained the reimbursement language stated in the third letter.

Franklin's outside coverage counsel responded to Liberty Mutual's January 4, 2005, letter and pointed out Franklin's "concern[s] about Liberty's position that you may wish to apportion costs or even seek reimbursement for expenses actually incurred by Liberty." He further intimates that in consideration of the years of business between the insured and insurer, Franklin was hopeful that Liberty Mutual would revise that position.

There is no explicit Mississippi statute or case law advocating or prohibiting reimbursement to an insurer of expenses and costs expended in defense of an insured in an action which is later determined not to be covered by the insurance contract. The Court finds that based on the facts of this case, reimbursement is not warranted.

As discussed above, Liberty Mutual was under a duty to defend Franklin against the claims asserted in the underlying state court action. Liberty Mutual admitted that the complaint on its face raised issues that were potentially covered under the WC/ELP policies. The November 29, 2004, trial court ruling provided notice to Liberty Mutual that all claims litigated from that point forward were based on Franklin's alleged intentional conduct. Thus, Liberty Mutual's continued defense of Franklin after November 29, 2004, constitutes a waiver of the right of reimbursement Liberty Mutual asserted in the reservation of rights letters. Furthermore, the WC/ELP policies at issue in this case

do not contain any contractual language providing for reimbursement of defense costs and expenses. Therefore, because Liberty Mutual was obligated to defend Franklin, it cannot now seek reimbursement for defense costs expended in that action.

Courts in other jurisdictions have held that an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims, and the insurer timely and explicitly reserved the right to recoup the costs and provided specific and adequate notice of the possibility of reimbursement. See United Nat'l Ins. Co. v. SST Fitness Corp., 309 F.3d 914, 921 (6th Cir. 2002) (when an insurer conditions payment of defense costs on the condition of reimbursement if the insurer had no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment); Grinnell Mut. Reins. Co. v. Shierk, 996 F. Supp. 836 (S.D. Ill. 1998) (same); Scottsdale Ins. Co. v. MV Transp., 115 P.3d 460, 467-68 (Cal. 2005) ("any insurer, having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed"); Buss v. The Sup. Ct. of Los Angeles, 939 P.2d 766 (Cal. 1997) (where the insurer acting under a reservation of rights, has prophylactically financed the defense of claims as to which it owed no duty of defense, it is entitled to restitution); Colony Ins. Co. v. G&E Tires & Serv., Inc., 777 So. 2d 1034, 1038 (Fla. App. 1st Dist. 2000) ("Having accepted Colony's offer of a defense with a reservation of right to seek reimbursement, G&E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed"). Without holding that Mississippi recognizes or should recognize a right of reimbursement, under the facts of this case, namely Liberty Mutual's duty to defend the underlying complaint, even jurisdictions that authorize a right of reimbursement would not find reimbursement proper here.

### E. Franklin's Other Counterclaims

Franklin also asserts the following counterclaims: breach of fiduciary duty to defend; bad faith in handling the underlying claim and lawsuit; gross negligence in handling Franklin's defense in the underlying action; breach of fiduciary duty in filing the declaratory action; and breach of duty to defend by abandoning Franklin prior to the conclusion of trial. Liberty Mutual has not expressly moved for summary judgment on all those claims, but has argued in a reply to their latest Motion for Summary Judgment [275] that either Mississippi does not recognize those claims or those claims are subsumed into Franklin's coverage by estoppel claim.

Any breach alleged for the duty to defend is sufficiently covered by Franklin's assertion of coverage by estoppel. Liberty Mutual contends that prior to the filing of this declaratory action, Franklin had not voiced any criticism of the underlying defense; therefore, the insurer seeks dismissal of Franklin's bad faith and gross negligence claims.

In order to recover punitive damages against an insurance company for bad-faith refusal to honor an obligation under an insurance policy, the insured

> must first demonstrate that the claim or obligation was in fact owed. . . . Second, the insured must demonstrate that the insurer has no arguable reason to refuse to pay the claim or to perform its contractual obligation. Finally, in order to recover punitive damages from the insurer for bad faith, the insured must demonstrate that the insurer's breach of the insurance contract "results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008) (citations omitted).

Here, as noted above, Liberty Mutual owed a contractual duty to defend Franklin based on the underlying complaint. Franklin has asserted that the defense provided was grossly negligent and provided in bad faith. However, Franklin has failed to raise any allegation that Liberty Mutual

directly influenced the defense of Franklin such that their conduct would rise to the level of bad faith or gross negligence. Accordingly, Franklin's counterclaims of bad faith and gross negligence are dismissed.

*D. Conclusion*

Liberty Mutual's Motion for Partial Summary Judgment [10] is granted in part and denied in part. Under the express provisions of the WC/ELP, Liberty Mutual has no obligation to cover the intentional acts of Franklin with respect to the underlying civil action. However, Liberty Mutual can not disclaim their duty to defend based on the allegations of the underlying complaint. Because Liberty Mutual was under a duty to defend, it cannot recover defense costs expended in the underlying action. Therefore, Defendant's Motion for Partial Summary Judgment [164] is granted, and Plaintiff's Motion for Partial Summary Judgment [175] is denied. Plaintiff's Motion for Summary Judgment as to Franklin's Counterclaim [273] is also granted in part and denied in part. Franklin has presented genuine issues of material fact as to whether it was prejudiced by Liberty Mutual's failure to notify the insured of its Moeller rights and the conflicts of interest created by defending the insured under a reservation of rights. Franklin's remaining claims asserted in their Counterclaim, however, are hereby dismissed.

SO ORDERED, this the 15th day of September, 2009.


 /s/ Sharion Aycock
**U.S. DISTRICT JUDGE**